1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7    LINDA WHITE, in her individual
     capacity and as the Personal              NO:  CV-10-174-RMP
8    Representative of the ESTATE OF
     CARLEY ALWINE; and the ESTATE             ORDER ADDRESSING
9    OF CARLEY ALWINE,                         DEFENDANT'S MOTIONS FOR
                                               SUMMARY JUDGMENT AND
10                          Plaintiffs,        PLAINTIFFS' MOTION IN *LIMINE*

11        v.

12   PROTOCALL a/k/a PROTOCALL
     SERVICES, INC; and DOE
13   DEFENDANTS I-V,
                            Defendants.
14

15        This matter comes before the Court on Defendant ProtoCall's first motion

16   for summary judgment, ECF Nos. 27, seeking dismissal of Plaintiffs' negligence

17   claim, and second motion for partial summary judgment, ECF No. 32, seeking

18   application of Washington state law in this action.  This matter also comes before

19   the Court on Plaintiffs' motion *in limine*, ECF No. 39, seeking application of

20   Oregon state law.  The Court has reviewed the parties' submissions regarding all

ORDER ADDRESSING DEFENDANT'S MOTIONS FOR SUMMARY
JUDGMENT AND PLAINTIFFS' MOTION IN *LIMINE* ~ 1

three motions, heard oral argument in Spokane, Washington, on October 7, 2011, and is fully informed.

FACTS

The following facts are undisputed, unless otherwise indicated. This case is centered on the suicide of 27-year-old Carley Alwine in rural Stevens County, Washington, on October 3, 2008. Ms. Alwine had recently divorced and returned to live with her mother and stepfather in Stevens County. Beginning on September 5, 2008, Ms. Alwine sought and received mental health care at Stevens County Counseling Service ("SCCS"), which later changed its name to Northwest Washington Alliance Counseling ("NEW Alliance").

### *Contract for Services between SCCS and ProtoCall*

SCCS contracted with ProtoCall, an Oregon corporation, to provide after-hours telephone intake, assessment, and crisis counseling services for SCCS's clients and potential clients. ECF No. 34-3. ProtoCall provided these services from its call center in Portland, Oregon.

The contract provides, in relevant part, that ProtoCall "will provide [SCCS] with a written report of all intake and counseling activity with its clients . . . within twenty-four (24) hours following the end of each day . . . ." ECF No. 34-3 at 2. ProtoCall also agrees "to take reasonable and appropriate action in the event of emergency situations." ECF No. 34-3 at 3. The contract continues, "Priority in

ORDER ADDRESSING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION IN *LIMINE* ~ 2

1    emergency situations will be given to clients and public safety; [SCCS] will be

2    contacted only after client safety is reasonably assured."  ECF No. 34-4 at 3.

3        A distinct "Additional Requirements" section of the Contract elaborates:

4        ProtoCall will provide the telephone crisis intervention and
         assessment services described in Section 2 of this Agreement.
5        Following ProtoCall's notification to [SCCS] as described [above] . . .
         ProtoCall will have no follow-up or ongoing responsibility or liability
6        for responsive action as to reported calls.  After notification from
         ProtoCall, [SCCS] shall assume responsibility and liability for any
7        follow-up or response to reported calls, including determination of
         what response [SCCS], in its sole discretion deems necessary or
8        appropriate.  ProtoCall agrees to assist [SCCS] by providing any
         necessary and available information requested by [SCCS] to facilitate
9        SCCS's response to reported calls.

10   ECF No. 34-3 at 3.

11       Pursuant to the contract between ProtoCall and SCCS, ProtoCall could also

12   secure "any information regarding individual clients that ProtoCall deems

13   necessary to ensure consistent treatment and client safety."  ECF No. 34-3 at 3.

14       ProtoCall did not provide counseling services to the general public.  ECF

15   No. 34 at 2.  The public could only receive counseling services from ProtoCall if a

16   member of the public called a service provider that contracted with ProtoCall for

17   counseling service support.  ECF No. 34 at 2.  ProtoCall contracted with mental

18   and behavioral health providers across 39 states including Washington state.  ECF

19   No. 34 at 2.  During 2008, ProtoCall provided crisis intervention services solely

20   from its office in Portland, Oregon.  ECF No. 34 at 2.

ORDER ADDRESSING DEFENDANT'S MOTIONS FOR SUMMARY
JUDGMENT AND PLAINTIFFS' MOTION IN *LIMINE* ~ 3

At the time of the events at issue, ProtoCall employed 65-75 "Clinical Specialists II," who were primarily responsible for handling crisis calls.  ECF No. 40-4 at 2.  The minimum qualification for a new hire as a Clinical Specialist II was a master's degree in an accredited program in a mental health or counseling-related field.  ECF 40-10 at 2.  Alternatively, a person with a degree from a non-accredited program or without a master's degree could be hired as a Clinical Specialist II if that person satisfied the qualifications set out for licensed professional counselors by the State of Oregon Board of Licensed Professional Counselors and Therapists.  ECF  No. 40-11 at 2.

Cindy Ohly was a Clinical Specialist II at ProtoCall.  Ms. Ohly received a master's in social work in June 2007 and worked at ProtoCall until February 2010.  ECF No. 40-17.

ProtoCall distinguished between clinical calls and business messages and all other types of non-clinical calls.  A crisis call is a sub-category of clinical calls.  A crisis call is one in which there is "some more immediate emotionality in that call that would . . . require the clinician to focus on some stabilization in that moment."  ECF No. 40-5 at 2.

According to the executive director of SCCS, "[a]lthough not specified in the contract for services that was reached with ProtoCall, it was understood that it would be the duty/obligation of the ProtoCall crisis counselors to contact the

ORDER ADDRESSING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION IN *LIMINE* ~ 4

Designated Mental Health Professional ("DMHP") on call in Stevens County and alert the DMHP once the ProtoCall crisis counselor had determined that the level of care of NEW Alliance's client was 'urgent.'"  ECF No. 47-1 at 4.

***Actions Taken by ProtoCall to Comply with Washington Law***

According to ProtoCall's President, Philip Evans, ProtoCall was required to obtain a license from the Washington State Department of Social Health and Human Services ("DSHS") to lawfully provide telephonic behavioral health services to people located within the State of Washington.  ECF No. 34 at 3.  To receive this license, ProtoCall was required to comply with Washington regulations.  ECF No. 34 at 3.  Washington DSHS inspected ProtoCall's Portland call center for the purpose of ensuring compliance with these regulations.  ECF No. 34 at 3.

***Actions Taken by ProtoCall to Comply with Oregon Law***

Mr. Evans also stated during his deposition that ProtoCall's operations should be consistent with Oregon administrative rules and statutory provisions regarding mental health.   ECF Nos. 40-2 at 2.  What is more, ProtoCall rewrote its policies and procedures following revision of Oregon's administrative rules and statutes.  ECF Nos. 49-2 at 4.  Prior to 2011, Oregon did not require a person to obtain a license to provide counseling services.  ECF No. 49-2 at 3-4.  The Oregon Department of Mental Health and Human Services did not impose licensing

ORDER ADDRESSING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION IN *LIMINE* ~ 5

1   requirements on ProtoCall.  ECF No. 49-1.  Nonetheless, therapists providing

2   services in Oregon, whether licensed or not, were required to comply with Oregon

3   statutes governing mental health services.  ECF No. 40 at 12.

4           Employees hired by ProtoCall as Clinical Specialist II who did not have a

5   master's degree from an accredited mental health related program were required to

6   meet standards established by the Board of Licensed Professional Counselors of

7   the State of Oregon.  ECF No. 40-11.  Furthermore, it was the understanding of

8   Brad Pendergraft, who was the director of clinical services for ProtoCall in 2008,

9   that ProtoCall employees, regardless of their status as licensed or non-licensed

10  therapists or counselors, were required to comply with Oregon rules, regulations,

11  and statutes.  ECF Nos. 40-9 at 2-3; 40-12; 40-13.

12  ***Ms. Alwine's Interactions with SCCS and ProtoCall***

13          When Ms. Alwine sought care at SCCS in September 2008, the SCCS

14  mental health professionals who treated Ms. Alwine diagnosed her with

15  generalized anxiety disorder, major depression, obsessive compulsive disorder,

16  borderline personality disorder, and alcohol abuse.  ECF No. 47-12 at 2.  Her

17  treatment providers also concluded that Ms. Alwine was prone to high risk

18  behavior, including cutting herself and considering or committing suicide.  ECF

19  No. 47-12 at 2.

20

ORDER ADDRESSING DEFENDANT'S MOTIONS FOR SUMMARY
JUDGMENT AND PLAINTIFFS' MOTION IN *LIMINE* ~ 6

1    Ms. Alwine reached ProtoCall by calling the local Stevens County phone

2    number.  Calls to Stevens County were electronically forwarded to ProtoCall when

3    the calls were received outside of SCCS's normal business hours.  ECF No. 34 at

4    2.

5    Ms. Alwine made at least seven telephone calls to SCCS between September 5,

6    2008, and October 2, 2008.  ECF No. 36-4 at 2-12.  Seven of these telephone calls

7    were transferred to ProtoCall.  ECF No. 36-4 at 2-12.   Ms. Alwine made three of

8    those seven calls seeking help for a friend.  ECF No. 36-4 at 6, 8-9.  The following

9    table elaborates on the four calls that Ms. Alwine made to ProtoCall on her own

10   behalf before October 2, 2008.

| Date/Time of Call | Duration | Content and Outcome |
|---|---|---|
| September 5, 2008; 4:55 p.m. | 11min., 43 sec. | Ms. Alwine reported that she was without transportation and was taking Paxil as a psychiatric medication.  Ms. Alwine was tearful throughout the call.  Ms. Alwine denied concerns relating to thoughts of harm to others or relating to domestic violence.  Ms. Alwine's concluding level of distress was mild, but her level of care was noted as "urgent." |
| September 22, 2008; 8:22 p.m. | 45 min., 58 sec. | Ms. Alwine provided information about her age, her recent divorce, where she was living, her hobbies and interests at that time, and her history of cutting herself and drinking alcohol.  She sought immediate phone support regarding her primary stressors, her depression, and, in particular, her suicidal ideation.  Ms. Alwine also sought help curbing her desire to drink and engage in cutting behavior.  ProtoCall staff |

ORDER ADDRESSING DEFENDANT'S MOTIONS FOR SUMMARY
JUDGMENT AND PLAINTIFFS' MOTION IN *LIMINE* ~ 7

| | | |
|---|---|---|
| | | engaged in planning with Ms. Alwine regarding short-term goals and secured information from Ms. Alwine regarding how she could best be reached. Ms. Alwine hung up before ProtoCall was able to finish the assessment. The level of care was marked as urgent, however the initial and concluding level of distress was recorded as "mild."<br>The report indicates that ProtoCall staff contacted the DMHP for SCCS, and the DMHP agreed to follow up with Ms. Alwine. |
| September 23, 2008; 7:36 p.m. | 7 min., 14 sec. | Ms. Alwine requested assistance with her transportation and housing needs for that evening. The report indicates that the ProtoCall staff handling the call made two "contacts for on-call services," one to the Stevens County Sheriff and another to an individual named "Wes R." who agreed to follow up with Ms. Alwine. |
| October 1, 2008; 7:23 p.m. | 17 min. | Ms. Alwine sought immediate phone support and intervention. The report noted that Ms. Alwine was a "frequent caller" and that Ms. Alwine "refused to let the call end" and that the ProtoCall staff "gently ended [the] call." Ms. Alwine indicated that she was taking three different psychiatric medications, Paxil, Dexadrine, and Klonopin. Her initial level of distress was "marked," and her concluding level of distress was "moderate." The level of care was urgent. The report does not indicate that any referrals to an on-call DMHP were made. |

ECF No. 36-4.

ORDER ADDRESSING DEFENDANT'S MOTIONS FOR SUMMARY
JUDGMENT AND PLAINTIFFS' MOTION IN *LIMINE* ~ 8

The evening of October 2, 2008, Ms. Alwine called ProtoCall in an agitated and tearful state to express her concerns about her living situation and about her desire to cut herself and drink alcohol.  ECF No. 47-13 at 2.  ProtoCall employee Cindy Ohly received the call and spoke with Ms. Alwine for approximately 19 minutes.  ECF No. 47-13 at 3.  According to the reports in the record before the Court, the October 2 phone call was the second phone call Ms. Ohly had handled from Ms. Alwine.  *See* ECF No. 36-4 at 7.  Cindy Ohly had access to all of the information in the reports of Ms. Alwine's previous phone calls to ProtoCall when she spoke with Ms. Alwine on October 2.  ECF No. 34 at 4.

At the outset of the call, Ms. Alwine presented with a "mild" level of distress, and, at the conclusion of the call, Ms. Ohly recorded Ms. Alwine's level of distress as "moderate."  ECF No. 36-4 at 12-13.  Ms. Alwine indicated that she was trying to recover from a difficult divorce and felt lonely and isolated.  Ms. Ohly engaged in several "interventions" during the call, including providing "Empathic Listening & Validation," using "Solution Focused strategies to facilitate positive focus," using "Solution Focused strategies to facilitate problem-solving," and discussing "Coping Skills & Strategies."  ECF No. 36-4 at 12.

Ms. Alwine asked Ms. Ohly about who was working as the on-call DMHP for Stevens County that evening.  ECF No. 36-4.  Ms. Ohly informed Ms. Alwine that she could not disclose the name of the DMHP but could explore, later in call, the

possibility of a referral to the DMHP.  The subject did not come up again.  In her

report, Ms. Ohly identified Ms. Alwine's level of care as "urgent."  ECF No. 47-13

at 3.  Ms. Ohly indicated that she reviewed Ms. Alwine's call history.  ECF No.

36-4 at 13.

As the call progressed, Ms. Alwine informed Ms. Ohly that she "may as well

go hang herself" and indicated that she had a scarf.  ECF No. 36-4 at 13.  Ms. Ohly

told Ms. Alwine that Ms. Alwine's statements sounded like "manipulation

designed to keep [Ms. Ohly] on the phone."  ECF No. 36-4 at 13.  Ms. Ohly

reported that Ms. Alwine "agreed to call us back if she started seriously thinking

about harming herself."  ECF No. 36-4 at 13.  Ms. Alwine began to cry more

intensely, and Ms. Ohly concluded the phone call by suggesting that Ms. Alwine

have herself a "good cry" and call back later if she needed additional support.  ECF

No. 36-4 at 13.  Ms. Ohly indicated that she consulted with her supervisor at

ProtoCall, Shelly Langton, regarding the call.  Neither Ms. Ohly nor Ms. Langton

contacted a DMHP during or after Ms. Alwine's phone call.

Ms. Alwine committed suicide early in the morning on October 3, 2008.

On June 1, 2010, Ms. Alwine's mother, Linda White, filed suit for negligence

in her personal capacity and as personal representative of Ms. Alwine's estate.

ECF No. 1.

ORDER ADDRESSING DEFENDANT'S MOTIONS FOR SUMMARY
JUDGMENT AND PLAINTIFFS' MOTION IN *LIMINE* ~ 10

ANALYSIS

***Summary Judgment Standard***

Summary judgment is appropriate when the Court determines that the movant has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

A court considering a summary judgment motion must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences supported by the evidence in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

***Choice of Law***

The parties filed cross-motions for the Court to determine whether Oregon or Washington substantive law governs this matter.  ECF No. 35 (Defendant's partial summary judgment motion); ECF No. 39 (Plaintiff's motion *in limine*).  The Court exercises diversity jurisdiction over this matter.  28 U.S.C. § 1332(a).  Courts sitting in diversity apply the forum state's choice of law rules to determine the controlling substantive law.  *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002).  Washington approaches conflict of law issues by requiring a threshold determination of whether there is an actual conflict between Washington law and the law of another state, here, Oregon.  *Rice v. Dow Chem. Co*., 124 Wn.2d 205,

1    210 (Wash. 1994). If no material conflict exists, the Court applies forum law.

2    *Rice v. Dow Chem. Co*., 124 Wn.2d at 210.

3           If there is a conflict, the Court proceeds to apply the forum state's choice of

4    law test. *Rice*, 124 Wn.2d at 210; *see also Fields v. Legacy Health System*, 413

5    F.3d 943, 951 (9th Cir. 2005). Washington applies the most significant

6    relationship test under the Restatement (Second) of Conflict of Laws to resolve

7    choice of law issues in tort cases. *Johnson v. Spider Staging Corp*., 87 Wn.2d 577,

8    580 (Wash. 1976). Under the most significant relationship test, the applicable law

9    is the law of the state with the most *significant* relationship to both the occurrence

10   and the parties. *Spider Staging Corp*., 87 Wn.2d at 580 (emphasis added).

11          With respect to the first stage of the analysis, an actual conflict exists "[i]f

12   the result for a particular issue 'is different under the law of the two states.'"

13   *Erwin v. Cotter Health Ctrs.*, 161 Wn.2d 676, 692 (Wash. 2007) (quoting *Seizer v.

14   Sessions*, 132 Wn.2d 642, 648 (Wash. 1997)). A conflict of law exists here.

15          In both Washington and Oregon, damages are available to wrongful death

16   claim beneficiaries for non-economic damages including loss of love, affection,

17   care, companionship, and other such support from the deceased. *Bowers v.

18   Fibreboard Corp*., 66 Wn.App. 454, 460 (Wash. App. Div. 2), *review denied*, 120

19   Wn.2d 1017 (Wash. 1992); Or. Rev. Stat. Ann. § 30.020(2)(d) (providing a

20   beneficiary may recover compensation for loss of "society, companionship and

ORDER ADDRESSING DEFENDANT'S MOTIONS FOR SUMMARY
JUDGMENT AND PLAINTIFFS' MOTION IN *LIMINE* ~ 12

services"). In both states, only those non-economic losses suffered by the decedent between the time of injury and death are recoverable by the estate. *See Walton v. Absher Constr. Co.*, 101 Wn.2d 238 (Wash. 1984); *Wilson v. Grant*, 162 Wn. App. 731 (Wash. App. Div. 3 2011); Or. Rev. Stat. Ann. §§ 30.040; 30.030(4), (5); *Burk v. Burk*, 137 Or. App. 197, 200 (Or. App. 1995).

However, the Washington and Oregon wrongful death statutes define differently who qualifies as a beneficiary under the statutory scheme. Under Washington's wrongful death statute, parents may be beneficiaries only if no "wife, husband, state registered domestic partner, child or children, including stepchildren" is a beneficiary and if "they are dependent upon the deceased person for support." RCW § 4.20.020; *see also Philippides v. Bernard*, 151 Wn.2d 376, 388, 945 (Wash. 2004) (holding that Washington's wrongful death statute precludes a decedent's parents from recovering under the statute absent "financial dependence"). By contrast, Oregon's wrongful death statute provides that beneficiaries include "surviving parents," who are entitled to inherit personal property under the Oregon's law of intestate succession, even absent the parent's dependency on the decedent. Or. Rev. Stat. Ann. § 30.020 (Westlaw, West 2011).

Ms. White was not dependent upon Ms. Alwine at the time of Ms. Alwine's death. Thus, Ms. White, as Ms. Alwine's mother, cannot recover in Ms. White's personal capacity in a wrongful death action under Washington law but may

ORDER ADDRESSING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION IN *LIMINE* ~ 13

recover in her personal capacity in a wrongful death action under Oregon law. *See* RCW § 4.20.202; Or. Rev. Stat. Ann. §30.020.

Because a conflict exists, the Court proceeds to apply the two-step most significant relationship test to resolve the choice of law issue. *Spider Staging Corp.*, 87 Wn.2d at 580. The Court first weighs the parties' contacts with each state. Specifically, the Court considers the following contacts:

(a) The place where the injury occurred,

(b) The place where the conduct causing the injury occurred,

(c) The domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) The place where the relationship, if any between the parties is centered. *Workman v. Chinchinian*, 807 F. Supp. 634, 637 (E.D.Wash. 1992) (quoting Restatement (Second) of Conflict of Laws § 145).

"'These contacts are to be evaluated according to their relative importance with respect to the particular issue.'" *Spider Staging Corp.*, 87 Wn.2d at 581 (quoting Restatement (Second) of Conflict of Laws § 6). The Court's "approach is not merely to count contacts, but rather to consider which contacts are most significant and to determine where these contacts are found." *Spider Staging Corp.*, 87 Wn.2d at 581.

ORDER ADDRESSING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION IN *LIMINE* ~ 14

1    Here, the injury occurred in Washington.  ECF No. 174 at 15-16.  In

2    personal injury cases, the most significant contact is presumptively the place where

3    the injury occurred.  *See Zenaida-Garcia v. Recovery Sys. Tech., Inc*., 128 Wn.

4    App. 256, 261-62, n. 17 (Wash. App. Div. 1 2005) ("Although there is [a]

5    presumption that in personal injury cases, the law of the place of the injury applies,

6    this presumption is overcome if another state has a greater interest in [the]

7    determination of a particular issue"); *Martin v. Goodyear Tire & Rubber Co*., 114

8    Wn. App. 823, 829-30 (Wash. App. Div. 1 2003); Restatement (Second) of

9    Conflict of Laws § 146 (1971).  Whether the other contacts and the second step of

10    the analysis rebut that presumption requires further analysis.

11    *Step One: Weighing the parties' contacts with Washington and Oregon*

12                    <u>*The place where the conduct causing the injury occurred*</u>

13    Defendant argues that Washington is the place where the conduct causing

14    the injury occurred because Ms. Alwine called the help line from Washington

15    using a Washington telephone number.  ECF No. 48 at 149.  Plaintiffs, on the other

16    hand, defined the conduct constituting the injury as Defendant's employee Cindy

17    Ohly's violation of ProtoCall's policy in failing to notify the Designated Mental

18    Health Professional ("DMHP") for Stevens County about Ms. Alwine's agitation

19    and suicidal ideation on October 2, 2008.  ECF No. 52 at 2-3.  Plaintiffs argue that

20

ORDER ADDRESSING DEFENDANT'S MOTIONS FOR SUMMARY
JUDGMENT AND PLAINTIFFS' MOTION IN *LIMINE* ~ 15

1    Defendant's negligence was the conduct causing the injury, ECF No. 52 at 2-3, and

2    Defendant's alleged negligent conduct occurred in Oregon, ECF No. 52 at 2-3.

3        The alleged negligence, here, is ProtoCall's failure to notify the DMHP for

4    Stevens County.  ECF No. 52 at 2-3.  Cindy Ohly, employee of ProtoCall, was in

5    Portland, Oregon, when she answered Ms. Alwine's telephone call and was in

6    Portland when she allegedly failed to call the DMHP for Stevens County.  ECF

7    No. 37 at 28-29.  Therefore, Oregon was the place where the conduct causing the

8    injury occurred.

9        *The domicile, residence, nationality, place of incorporation and place of*

10   *business of the parties*

11       The third contact the Court must consider is the domicile, residence,

12   nationality, place of incorporation, and place of business of the parties. *Workman*,

13   807 F. Supp. at 637 (quoting Restatement (Second) of Conflict of Laws § 145).

14   ProtoCall is incorporated in the state of Oregon.  ECF No. 37.  It provides services

15   to entities across thirty-nine states, including Washington.  ECF No. 37 at 4.  The

16   place of business handling the telephone call at issue was located in Portland,

17   Oregon.  ECF No. 37.  On the other hand, Plaintiffs were and are residents of the

18   State of Washington.  ECF No. 48.

19   / / /

20   / / /

ORDER ADDRESSING DEFENDANT'S MOTIONS FOR SUMMARY
JUDGMENT AND PLAINTIFFS' MOTION IN *LIMINE* ~ 16

*The place where the relationship, if any, between the parties was centered*

Plaintiffs argue that the relationship between the parties was centered in Portland, Oregon, the location of ProtoCall's office. ECF No. 43 at 2. Ms. Ohly answered Ms. Alwine's telephone call in the Portland office. Ms. Ohly also provided counseling interventions for Ms. Alwine on October 2, 2008, from the Portland office. ECF No. 43 at 2:23-24. Furthermore, Ms. Ohly consulted from this Portland office with Shelly Langton, a supervisor at ProtoCall who was also in the Portland office. ECF No. 43 at 2. ProtoCall developed its "Suicide Assessment Policy," which Ms. White alleges Ms. Ohly violated, in Oregon. ECF No. 43 at 2-3. ProtoCall conducted in its Portland office an internal investigation of whether Ms. Ohly violated ProtoCall's "Suicide Assessment Policy." ECF No. 43 at 3. Although the relationship at issue is not the one between ProtoCall and SCCS, the contract between these parties provides for Oregon law to govern disputes arising under the contract, which, Plaintiffs argue, supports that Defendant's relationship with people calling SCCS, including Ms. Alwine, was centered in Oregon. ECF No. 39 at 4-5.

On the other hand, ProtoCall focuses on the place where the relationship between the parties was centered not from the perspective of ProtoCall but, rather, from the perspective of Ms. Alwine at the time she called ProtoCall. *See generally* ECF No. 48 at 8. Specifically, Ms. Alwine made the telephone call to ProtoCall

ORDER ADDRESSING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION IN *LIMINE* ~ 17

1   from Washington.  ECF No. 48 at 8.  She called a Washington phone number.

2   ECF No. 48 at 8.  She likely had no knowledge that the person with whom she

3   spoke was located in an Oregon office.  ECF No. 48 at 8.  Ms. Alwine did not

4   directly call ProtoCall but, rather, called a Washington phone number provided by

5   SCCS.  ECF No. 35 at 4.  The SCCS phone system forwarded Ms. Alwine's

6   telephone call to ProtoCall.  ECF No. 48 at 4.

7         The Court finds that the relationship between Plaintiffs and Defendant is

8   centered in Washington.  Ms. Alwine initiated contact with Defendant from

9   Washington by dialing a Washington phone number in the course of mental health

10  treatment she was receiving in Stevens County, Washington.

11  *Second step: the interests and public policies of Washington and Oregon*

12        The Court proceeds to consider "the interests and public policies" of

13  Washington and Oregon and "the manner and extent of such policies as they relate

14  to the transaction at issue."  *Potlatch No. 1 Fed. Credit Union v. Kennedy*, 76

15  Wn.2d 806, 810 (Wash. 1969).  The Court evaluates the policy interests of each

16  state in light of "'the purpose sought to be achieved by their relevant local law

17  rules and the particular issue involved.'"  *Workman*, 807 F.Supp. at 647 (quoting

18  *Southwell v. Widing Transp. Inc.*, 101 Wn.2d 200, 204 (Wash. 1984)).

19        Both states have interests in applying their wrongful death statutory

20  schemes.  Washington's wrongful death statutory scheme limits the class of people

ORDER ADDRESSING DEFENDANT'S MOTIONS FOR SUMMARY
JUDGMENT AND PLAINTIFFS' MOTION IN *LIMINE* ~ 18

who may recover damages in a wrongful death action.  RCW § 4.20.020.

Specifically, Washington's wrongful death statute precludes second tier

beneficiaries, such as parents, from recovery absent financial dependence on the

decedent.  RCW § 4.20.020; *see Beggs v. State*, 171 Wn.2d 69, 81 (Wash. 2011)

(explaining that second tier beneficiaries must show dependency because the

relationship between the second tier beneficiary and the decedent is such that the

second tier beneficiary, unlike a first tier beneficiary, does not necessarily sustain

economic damages as a matter of course).

In defining the class of beneficiaries narrowly, the State of Washington

expresses an interest in protecting "defendants from excessive financial burdens."

*See Spider Staging Corp.*, 87 Wn.2d at 582.  Limiting liability may also "eliminate

speculative claims and difficult computation issues."  *See Spider Staging Corp.*, 87

Wn.2d at 582.

On the other hand, Oregon's wrongful death statutory scheme defines

expansively the class of people entitled to recover damages.  Or. Rev. Stat. Ann. §

30.020 (Westlaw, West 2011).  The effect of defining the class of beneficiaries

broadly under a wrongful death statute is to expand potential liability.  *Spider

Staging Corp.*, 87 Wn.2d at 582-83.  The primary purpose of defining broadly the

class of people who may recover under a wrongful death statute is to deter conduct

within the state's borders that wrongfully takes life.  *See Spider Staging Corp.*, 87

1    Wn.2d at 582-83.  The purpose of Oregon's wrongful death statute is to provide

2    recovery for wrongful death where recovery was unavailable under common law.

3    *Fergison v. Belmont Convalescent Hospital*, 217 Or. 453, 461 (Or. 1959).

4          The Court finds that Oregon's interest in applying its wrongful death statute

5    to Washington residents does not outweigh Washington's interest in promoting

6    uniformity of its wrongful death statute to Washington residents seeking liability

7    for injuries that occurred in Washington.  The Court further finds that the

8    presumption that the law of the place of the injury applies has not been rebutted,

9    and, therefore, Washington state law is properly applied here.  *See Zenaida-*

10   *Garcia,* 128 Wn. App. at 261-62, n. 17.

11         *Negligence*

12         Defendant argues that summary judgment is appropriate because Defendant

13   had no duty to prevent Ms. Alwine from committing suicide.  Plaintiff responds

14   that the negligence she alleges is instead a failure to meet the requisite standard of

15   care applicable to ProtoCall's clinical specialists by not providing prudent crisis

16   counseling to Ms. Alwine and not notifying the on-call DMHP for Stevens County

17   Counseling ("NEW Alliance") once Ms. Alwine's level of care was determined to

18   be "urgent."  Moreover, Plaintiff argues that, even if the Court analyzes

19   Defendant's behavior under a theory of whether they had a duty to prevent Ms.

20   Alwine's suicide, a special relationship existed between ProtoCall and Ms. Alwine.

ORDER ADDRESSING DEFENDANT'S MOTIONS FOR SUMMARY
JUDGMENT AND PLAINTIFFS' MOTION IN *LIMINE* ~ 20

Under Washington law, any claim for damages for an injury resulting from negligent provision of health care by a "health care provider" is exclusively governed by Chapter 7.70 RCW.  Plaintiffs clarified at oral argument that they are pursuing liability on a theory of professional negligence.  However, although mental health counselors generally fall within the scope of Chapter 7.70 RCW, Defendant does not qualify as a "health care provider" under that chapter.[1]

Therefore, Plaintiffs' negligence claim must be analyzed under Washington common law, rather than within the boundaries of the health care malpractice statute.

To prevail on a common law negligence claim, a plaintiff must show duty, breach, proximate cause, and injury.  *Snyder v. Med. Serv. Corp. of E. Wash.*, 98 Wn. App. 315, 323 (Wash. App. Div. 3 1999), *aff'd*, 145 Wn.2d 233 (Wash. 2001).

Ordinarily, there is no duty of care to prevent a person from committing suicide.  *See Webstad v. Stortini*, 83 Wn. App. 857 (Wash. App. Div. 2 1996) (trial court properly dismissed on summary judgment a claim that the defendant owed a

---

[1] The definition for "health care provider" is limited, in relevant part, to "an entity . . . employing one or more" "persons licensed by [Washington state] to provide health care or related services."  RCW 7.70.020(1), (3).

ORDER ADDRESSING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION IN *LIMINE* ~ 21

duty to prevent a woman's suicide, despite previous romantic relationship and fact

that decedent took overdose of pills in his presence).  Likewise, suicide is often

treated as an intervening cause that breaks the chain of causation, negating the

element of proximate cause that is necessary for a successful negligence claim.

*Corales v. Bennett*, 567 F.3d 554, 572-73 (9th Cir. 2009) (holding that, under

California law, a middle school student's suicide was an intervening cause where

the school vice principal allegedly acted negligently toward the student, but where

the student attended class, spoke with his mother and another individual, wrote a

detailed suicide note, and otherwise acted in a way that reflects an opportunity to

appreciate the nature of his action rather than an uncontrollable urge to commit

suicide caused by the vice principal's behavior); *see also Harbaugh v.

Coffinbarger*, 209 W.Va. 57, 543 S.E.2d 338, 346 (W.Va. 2000) (per curiam) (in

general, suicide is an intervening cause that precludes liability); *Krieg v. Massey*,

239 Mont. 469, 781 (Mont. 1989) (same); *McLaughlin v. Sullivan,* 123 N.H. 335,

461 A.2d 123, 124 (N.H. 1983) (same).

However, a person or a vicariously liable entity may be under a duty to

protect a person even from self-inflicted harm where there is a special relationship

and reasonably foreseeable likelihood that the self-inflicted harm would occur. *See

Gregoire v. City of Oak Harbor*, 170 Wn. 2d 628 (Wash. 2010) (holding that a jury

instruction on an assumption of risk as defense to wrongful death claim brought

ORDER ADDRESSING DEFENDANT'S MOTIONS FOR SUMMARY
JUDGMENT AND PLAINTIFFS' MOTION IN *LIMINE* ~ 22

1    against jailor arising out of inmate's suicide was erroneous because a special

2    relationship existed); (Wash. App. 1971) (upholding a negligence verdict against a

3    hospital arising out of a patient's attempted suicide on the basis that the hospital's

4    "duty [to safeguard] contemplates the reasonably foreseeable occurrence of self-

5    inflicted injury whether or not the occurrence is the product of the injured person's

6    volitional or negligent act . . . . Any other rule would render the actor's duty

7    meaningless").

8            The Court finds that Defendant minimizes in its briefing its awareness of

9    Ms. Alwine's mental health treatment history and the degree to which Defendant

10   was involved in providing services to Ms. Alwine.  *See, e.g.,* ECF No.  ECF No. 35

11   at 3.  The undisputed facts demonstrate that ProtoCall could have requested

12   information from SCCS pursuant to the contract, and even without Ms. Alwine's

13   file from SCCS, ProtoCall's own records from Ms. Alwine's five phone calls

14   provide much information about Ms. Alwine to support that her suicide may have

15   been a reasonably foreseeable occurrence.  For example, ProtoCall's reports

16   indicate that Ms. Alwine had reported taking three psychiatric medications and

17   experiencing suicidal ideation.  Moreover, ProtoCall's reports classified Ms.

18   Alwine's level of care as "urgent" over the course of a month, and a reasonable

19   fact finder could find, based on the reports, that Ms. Alwine's emotional state was

20   in decline.

ORDER ADDRESSING DEFENDANT'S MOTIONS FOR SUMMARY
JUDGMENT AND PLAINTIFFS' MOTION IN *LIMINE* ~ 23

Therefore, viewing the facts in the light most favorable to Plaintiffs, the Court finds that there are genuine issues of material fact such that Defendant is not entitled to summary judgment on Plaintiffs' negligence claim.

Accordingly, in light of the foregoing analysis and findings, **IT IS ORDERED** that:

1. Defendant's Second Motion for Partial Summary Judgment, **ECF No. 32**, is **GRANTED**;

2. Plaintiffs' Motion *in Limine*, **ECF No. 39**, is **DENIED**.

3. Defendant's First Motion for Summary Judgment, **ECF No. 27**, is **DENIED**.

The District Court Executive is directed to enter this order and provide copies to counsel.

DATED this 31st day of October, 2011.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

ORDER ADDRESSING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION IN *LIMINE* ~ 24